UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN A. GRAVES,

                          Plaintiff,

v.                                                          8:16-CV-1546
                                                            (GTS/DJS)
GOODNOW FLOW ASS'N, INC., its Agents and Assigns;
DREW CULLEN, Personally and as a Director and Officer
of the Goodnow Flow Ass'n, Inc; ED BANOVIC,
Personally and as a Director and Officer of the Goodnow
Flow Ass'n, Inc; BILL FIBIGER, Personally and as a
Director and Officer of the Goodnow Flow Ass'n, Inc;
CULLEN McVOY, Personally and as a Director and Officer
of the Goodnow Flow Ass'n, Inc.; JERRY CULLEN,
Personally and as a Director and Officer of the Goodnow
Flow Ass'n, Inc; LEE CORMIE, Personally and as a
Director and Officer of the Goodnow Flow Ass'n,
Inc; RAY WOOD, Personally and as a Director and Officer
of the Goodnow Flow Ass'n, Inc; RALPH GREEN,
Personally and as a Director and Officer of the Goodnow
Flow Ass'n, Inc.; JAMES DiPASQUALI,
Personally and as a Director and Officer of the Goodnow
Flow Ass'n, Inc.; and LUDEMANN, McMORRIS &
SILVESTRI, P.C.,[1]

                          Defendants.

_____


APPEARANCES:                                                OF COUNSEL:

JOHN A. GRAVES
   Plaintiff, *Pro Se*
60 Croaker Road South
Merritt, NC 28556

_____

[1]        In his notice of appearance, counsel for Defendant Ludemann, McMorris &
Silvestri, P.C., advises that Plaintiff incorrectly named his client as "Stanclift, Ludemann,
McMorris & Silvestri, PC."  (Dkt. No. 6.)  <u>As a result, the Clerk of the Court is directed to
amend the caption on the docket sheet accordingly.</u>

WALSH & WALSH, LLP
  Counsel for Defendants Goodnow Flow Ass'n, Inc.,
  Cullen, Banovic, Fibiger, McVoy, Cullen, Cormie,
  Wood, Greene, and DiPasquali
42 Long Alley
Saratoga Springs, NY 12866

JESSE SCHWARTZ, ESQ.

GOLDBERG SEGALLA LLP
  Counsel for Defendant Ludemann, McMorris &
  Silvestri, P.C.
8 Southwoods Blvd., Suite 300
Albany, NY 12211

JONATHAN M.
BERNSTEIN, ESQ.

GLENN T. SUDDABY, Chief United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this action filed *pro se* by John A. Graves ("Plaintiff")

against the eleven above-captioned entities and individuals, pursuant to, *inter alia*, 42 U.S.C. §

1983, is a motion to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction and for

failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(1) and

(6), filed by Defendant Goodnow Flow Association, Inc., and the above-captioned individuals

(collectively, "GFA Defendants"), and Plaintiff's cross-motion for temporary relief.  (Dkt. Nos.

22, 24.)  For the reasons set forth below, GFA Defendants' motion is granted, and Plaintiff's

cross-motion is denied.  In addition, Plaintiff's claims against Defendant Ludemann, McMorris

& Silvestri, P.C. ("Ludemann") are *sua sponte* dismissed.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, in his Complaint, Plaintiff alleges as follows.  Plaintiff, a resident of North

Carolina, owns real property at 389 Woody's Road, Lot # 252, in Newcomb, New York.  (Dkt.

No. 1 at ¶¶ 2-4 [Plf.'s Compl.].)  Plaintiff's lot is located on the Goodnow Flow, a man-made

lake in Essex County. (*Id.* at ¶¶ 3-4.) The lot, which was purchased by Plaintiff's father by warranty deed in 1957, passed to Plaintiff "in a series of quitclaim deeds from his [f]ather's estate, and from siblings." (*Id.* at ¶ 5.) The deed contains no reference to any homeowner's association. (*Id.* at ¶ 6.) Plaintiff's "personal initial legal interest" in the lot arose in 1984. (*Id.* at ¶ 7.) There are approximately 250 lots on the Goodnow Flow, all of which were "initially purchased from" a paper company. (*Id.* at ¶¶ 8, 11.) The lots are now owned by people from various states and countries. (*Id.* at ¶ 25.)

Defendant Goodnow Flow Association, Inc. ("GFA") was formed in 1956 "as an informal group of sportsmen" and incorporated in 1957. (*Id.* at ¶ 12.) The "main purpose" of GFA was to obtain leases on lands owned by the paper company to be used for "hunting and fishing." (*Id.* at ¶ 13.) "Initial GFA members" paid dues on a voluntary basis, and those dues were used to acquire the leases and to pay for "other minor expenses." (*Id.* at ¶ 18.)

On or about March 4, 1960, GFA "invited all lot owners to join the organization 'if they so desire,'" and "subsequent meeting minutes show repeated efforts to have more lot owners join." (*Id.* at ¶ 19.) "Through 2015," membership with GFA was "allegedly voluntary." (*Id.* at ¶ 20.) However, beginning in or around 1964, GFA's Board of Directors ("BOD") has "threatened with force and violence" "numerous non-member lot owners," and "destroyed" these non-members' property, in an effort "to coerce them to join" GFA. (*Id.*) At some point in 2013, Defendant Ray Wood "threatened Plaintiff" and told him that he would be "chased down and held by [Wood] for a law enforcement officer to arrive, and charge him with trespassing if he went upon the lake without paying dues." (*Id.* at ¶ 24.)

During the summer of 2014, Plaintiff "sent questionnaires" to other lot owners, seeking their responses to "his concerns with the GFA[.]" (*Id.* at ¶ 21; *accord*, Dkt. No. 1, Attach. 1, at 16-23 [Questionnaires].) Moreover, "[s]everal lot owners" contacted Plaintiff and expressed "their confusion and disagreement regarding the GFA's insistence that the lake could be used only by paid members." (*Id.* at ¶ 22.)

Since GFA's inception, its "officers and agents" have used the United States Postal Service, as well as telephone and internet services, to "communicate with one another, with lot owners, and [with] State and Federal agencies in furtherance of its scheme to gain ownership and control of all individual lots, and lot owners." (*Id.* at ¶ 26.) "They" (apparently referring to GFA Defendants) "conspired to swindle lot owners," who had acquired their lots in fee simple "with no mention of the GFA," from lawful access to and/or use of the Goodnow Flow, roads, rights of way, and parking lots. (*Id.* at ¶ 27.) Over the years, GFA has done numerous other improper and/or illegal things, including the following: (1) requiring "longtime members" to pay an "initiation fee" equal to annual dues "in order to become a voting member"; (2) requiring members who wished to "vote or be heard at meetings" to pay any unpaid dues from 1998 forward, "even if they jointed after that year"; (3) amending GFA's by-laws "numerous times" without presenting the amendments to the membership or filing required documents with the New York State Department of Law's Real Estate Finance Bureau; (4) charging a five-percent interest rate, which is illegally compounded monthly, for delinquent fees; (5) being in "the process of borrowing money from a local bank in furtherance of its staggering expansion plans, and [with] total disregard of [the] due process rights of owners"; and (6) "ha[ving] proposals to amend the by-laws to state that the GFA is a HOA" and that lot owners must join. (*Id.* at ¶¶ 31-

32, 34-35, 38, 40-41.)  Additionally, GFA's BOD has performed trenching and "created a drainage problem on Plaintiff's land," which has cost Plaintiff $30,000 to repair.  (*Id.* at 49.)

GFA sued Plaintiff  in New York State Supreme Court, Essex County ("State Supreme Court"), for failure to pay dues after 2012.  (*Id.* at ¶ 50.)  GFA was awarded summary judgment "without any hearing or trial," and, as a result, Plaintiff "was denied his Constitutional right to due process: an opportunity to be heard, . . . to present evidence, and to confront those who made affidavits to the Court in pleadings."  (*Id.* at ¶ 51.)  On appeal, the New York State Supreme Court, Appellate Division, Third Department, found that Plaintiff "fail[ed] to preserve" certain arguments for appeal, including his arguments related to whether or not GFA is a homeowners' association.  (*Id.* at ¶¶ 52-53.)  Because this issue "has never been heard on the merits," Plaintiff's right to due process has been violated.[2]  (*Id.* at ¶ 55.)  Moreover, Plaintiff has paid (a) Ludemann $17,550.94 in legal fees, and (b) non-party Carole P. Burley, Esq., $20,000 for "research and consultations regarding pleadings and trial preparation" as well as "assist[ance] . . . as he proceeds *pro se*."  (*Id.* at ¶ 55.)

The Court will not further recite the allegations contained in Plaintiff's Complaint, with which the parties are familiar.  Rather, the Court refers the reader to the Complaint in its entirety. (Dkt. No. 1.)

---

[2]        Moreover, during the lawsuit, members of GFA's BOD "fraudulently presented" GFA as a homeowners' association to the State Supreme Court and the Third Department.  (*Id.* at ¶ 28.)  These representations, and other "untruths and outright lies" presented to the state courts, "led the [c]ourt[s] to make membership mandatory" and, as a result, lot owners were "deprived of quiet enjoyment of their land" and forced to pay "illegal and outrageous 'fees' to exercise their riparian rights[.]"  (*Id.* at ¶¶ 28-30.)

Based upon the foregoing allegations, and liberally construing his Complaint,[3] Plaintiff appears to assert the following claims, grouped within several non-sequentially numbered "causes of action": (1) claims of fraud and unjust enrichment under New York State common law, "NY GBS Law § 352-C," and "NY NPCL," (asserted against GFA, its BOD, Banovic, and Wood) (*id.* at ¶¶ 57-64);[4] (2) claims of "undue enrichment," fraud, "extortion," and "a pattern of racketeering," based upon, *inter alia*, Cullen's alleged "lies" and "deception" during the course of the state court proceedings (asserted against GFA, its BOD, and Cullen) (*id.* at ¶¶ 65-72); (3) a claim of "fraud upon the court" and "malpractice" based upon the fact that McVoy, a licensed attorney, "actively participated in" GFA Defendants' "unjust pattern of threats and extortion against property owners on the Flow" (asserted against GFA, its BOD, and McVoy) (*id.* at ¶¶ 73-83); (4) claims of "misuse of Legal Process for the purpose of swindling someone" pursuant to 42 U.S.C. § 1983 and 18 U.S.C. § 1961 *et seq.*, extortion pursuant to 18 U.S.C. § 1961(b)(2) and New York General Business Law § 352-c, and interference with commerce and threats of violence pursuant to 18 U.S.C. § 1951 (asserted against GFA and its BOD) (*id.* at ¶¶ 84-92); (5) a claim of "use of the mails and wire services" for "fraudulent, criminal purposes" under 18 U.S.C. §§ 1341, 1343 (asserted against GFA and its BOD) (*id.* at ¶¶ 95-101; (6) claims of legal

<hr />

[3]     The Court notes that it is unclear whether Plaintiff is entitled to special solicitude as a *pro se* litigant because it appears that he had the benefit of counsel when drafting his Complaint in this action.  (Dkt. No. 1 at ¶ 55.)  *See also Meng v. Xinhuanet Co., Ltd.*, 16-CV-6127, 2017 WL 3175609, at *2 (S.D.N.Y. July 25, 2017) ("Courts in this District have observed that it would be 'fundamentally unfair' to extend the special solicitude typically afforded *pro se* parties to submissions drafted by lawyers.") (citing cases).  However, out of an abundance of caution, the Court will afford Plaintiff such special solicitude.

[4]     The Court assumes that Plaintiff's reference to "NY GBS Law § 352-C" is intended to refer to New York General Business Law § 352-c, and that Plaintiff's reference to "NY NPCL" is intended to refer to the New York Not-For-Profit Corporation Law.

malpractice and "aid[ing] and abett[ing] the . . . other Defendants . . . in the fraudulent, extortionist racketeering scheme" (asserted against Ludemann) (*id.* at ¶¶ 102-110); and (7) a claim of "RICO racketeering" based upon, *inter alia,* DiPasquali's efforts to secure financing for constructing a dam on the Goodnow Flow and his representations to the New York State Department of Environmental Conservation that GFA is a homeowners' association (asserted against GFA, its BOD, and DiPasquali) (*id.* at ¶¶ 111-119). In addition, Plaintiff also requests a temporary restraining order, freezing GFA's "accounts and other assets" and proscribing GFA from collecting "dues, assessments or any money from Plaintiff and other lot owners[.]" (*Id.* at ¶¶ 120-126, Wherefore Clause.)

## B. Relevant Procedural History[5]

### 1. GFA's State Court Complaint and Plaintiff's Answer

In August 2013, GFA sued Plaintiff in State Supreme Court (i.e., the legal proceedings described in Plaintiff's Complaint), seeking (1) a monetary judgment for Plaintiff's unpaid GFA dues and assessments, and (2) a declaratory judgment regarding Plaintiff's obligation to make

---

[5]     The following procedural history is drawn from Plaintiff's Complaint, the exhibits attached thereto, and the record on appeal from the state court case referenced in Plaintiff's Complaint, which was filed by GFA Defendants as exhibits to their motion. With respect to the state court record on appeal, the Court finds the documents constituting the record on appeal (including briefs and pleadings) to be incorporated by reference in and/or integral to the Complaint; and the Court may, in any event, take judicial notice of such documents. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("Where a document is not incorporated by reference, the court may neverless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 502 n.1 (S.D.N.Y. 2016) ("In deciding a motion to dismiss under Rule 12(b)(6), a court can take judicial notice of court documents."); *see also Bentley v. Dennison*, 852 F. Supp. 2d 379, 382 n.5 (S.D.N.Y. 2012) ("The Court takes judicial notice of the administrative and state court documents submitted by the defendants . . . because the facts noticed are not subject to reasonable dispute and are capable of being verified by sources whose accuracy cannot be reasonably questioned.").

future payments. (Dkt. No. 22, Attach. 4, at 17-23 [GFA's State Sup. Ct. Compl.].)[6] More specifically, GFA claimed that, based upon Plaintiff's "longstanding knowledge of the nature of the Goodnow Flow Subdivision," GFA's "existence and purposes," his "actual receipt of [GFA's] By-Laws and numerous written communications . . . over the years from" GFA, his "acceptance and use of" GFA's facilities, real property, and services, and his prior payment of annual dues," Plaintiff "has an implied-in-fact contract with [GFA] whereby" Plaintiff is "obligated to pay his proportional share of [GFA's] fair and reasonable costs of providing such facilities, common property and services . . . ." (*Id.* at 23.) In his Verified Answer, Plaintiff denied GFA's substantive allegations, raised two affirmative defenses (one being that the amount sought for Plaintiff's 2013 dues was "excessive and does not represent [his] pro-rata share"), and interposed a counterclaim that GFA negligently performed road and drainage work and damaged his lot. (*Id.* at 24-30 [Plf.'s State Sup. Ct. Ans.].)

### 2.      GFA's Motion for Summary Judgment in State Supreme Court

In June 2014, GFA moved for summary judgment in the state court proceeding. (Dkt. No. 22, Attach. 4, at 37-150; Dkt. No. 22, Attach. 5, at 151-276.) In support of its motion, GFA argued that an implied-in-fact contract existed between each Goodnow Flow lot owner and GFA, obligating each to pay annual assessments to GFA in accordance with its by-laws. (*See, e.g.,* Dkt. No. 22, Attach. 4, at 35 [Notice of Motion]; *id.* at 41 [Cullen Aff.].) Moreover, GFA argued that it had not performed any road or drainage work during the time relevant to Plaintiff's property damage claim, and therefore did not cause Plaintiff's alleged property damage. (*Id.* at 43-45.)

---

[6]      Unless otherwise noted, citations to the state court record on appeal are to the record pagination (i.e., the page number appearing at the bottom center of each page).

### 3. Plaintiff's Opposition to GFA's Motion for Summary Judgment in State Court

In opposition to GFA's motion for summary judgment, Plaintiff argued that GFA's claims for assessments were without merit because (1) voluntary payment of an assessment by a non-member of GFA does not constitute membership in GFA, (2) the deeds and chain-of-title documents related to Plaintiff's lot contain no covenants or restrictions of use, (3) Plaintiff is not bound by GFA's by-laws, (4) Plaintiff is obligated to pay only a share of the common expenses that benefit his property and which he uses, (5) GFA improperly sought to recover more than Plaintiff's pro-rata share of the common expenses because owners of multiple lots paid only a single-lot assessment annually, (6) GFA cannot acquire new lands and compel non-members to pay for those lands and related services without limitation, and (7) questions of material fact existed as to whether volunteer road work done by GFA members and board members caused damage to Plaintiff's property. (Dkt. No. 22, Attach. 5, at 277-79 [Atty. Aff.]; *id.* at 280-84 [Graves Aff.].)

### 4. State Supreme Court's Decision and Order

In a Decision and Order filed on December 3, 2014, State Supreme Court Justice Thomas Buchanan granted GFA's motion for summary judgment and dismissed Plaintiff's counterclaim. (Dkt. No. 22, Attach. 4 at 5-8 [Decision and Order, filed Dec. 3, 2014].) Based upon the evidence submitted by GFA (including affidavits of GFA president Drew Cullen and GFA member Robert Greene, describing the history of GFA and Plaintiff's family's involvement with GFA), Justice Buchanan found that an implied-in-fact contract existed and provided "the basis for the unpaid assessments being sought[.]" (*Id.* at 6.) Relying on, *inter alia*, *Seaview Ass'n of Fire Island, N.Y. v. Williams*, 69 N.Y.2d 987, 989 (N.Y. 1987), Justice Buchanan rejected

Plaintiff's argument that his assessment should be reduced because Plaintiff "is interested only in using the lake for fishing and is not interested in hunting," and held that (1) the implied-in-fact contract obligated Plaintiff to pay a proportionate share of the full cost of maintaining the facilities and services provided at the Goodnow Flow, and (2) the method of calculating dues and assessments per lot owner was set forth in GFA's by-laws and was consistent with the requirements of New York Not-For-Profit Corporation Law §§ 507 and 611. (*Id.* at 7.) Finally, the State Supreme Court concluded that GFA established its entitlement to summary judgment with respect to Plaintiff's counterclaim (based on the affidavit of Kenneth Helms, who asserted that he did contract to perform work at the Goodnow Flow, but did not perform any work in the vicinity of Plaintiff's lot). (*Id.* at 7-8.)

### 5.    Plaintiff's Appeal to the Third Department

Plaintiff appealed the State Supreme Court's Decision and Order, which the Third Department affirmed. *Goodnow Flow Ass'n Inc. v. Graves*, 135 A.D.3d 1228 (N.Y. App. Div. 3d Dep't 2016). More specifically, as the Third Department explained, Plaintiff's "primar[y] argu[ment]" was that, "because some of [GFA's] expenditures–such as the leasing of additional lands for members' hunting and recreational activities–do not provide a specific benefit to his property, it was error for Supreme Court to find that he is obligated to pay his assessed share of annual dues." *Goodnow Flow Ass'n Inc.*, 135 A.D.3d at 1229. The Third Department found Plaintiff's argument to be lacking in merit because

> [i]t is well-established law that when an owner has acquired property with knowledge that a private community homeowners' association provides facilities and services for the benefit of community residents, the purchase of property there may manifest acceptance of conditions of ownership, among them payment for the facilities and services offered. In such cases, an implied

10

contract arises under which the owner is obligated to pay a
proportionate share of the full cost of maintaining those facilities
and services, not merely the reasonable value of those actually
used by [the owner]. Moreover, absent a showing of bad faith or
breach of fiduciary obligations, courts will not substitute their
judgment for that of a community or homeowners' association
with respect to the wisdom of their expenditures.

*Id.* at 1229-30 (citations and internal quotation marks omitted). Based upon these points of law,

the Third Department summarized the evidence presented, and its conclusions, as follows:

[GFA] met its prima facie burden of entitlement to summary
judgment by submitting, among other things, the affidavit of its
president in which he recounted the history of [GFA] and averred
that it has been in existence since at least 1957, well before
defendant obtained sole title to his lot in 2012. The bylaws that
were in effect at the time that [Plaintiff] obtained title were also
submitted; they required members to pay dues and listed among
[GFA's] purposes "[t]o provide outdoor recreation for members of
[GFA], their families and their guests" and "[t]o lease land
adjacent to the Goodnow Flow for hunting, fishing and other
recreational purposes." [GFA] further submitted photographs of
signage posted at conspicuous locations around the lake, such as a
parking lot and a boat launch, which indicated that the lake and
amenities were for the exclusive use of [GFA's] members. In
opposition, [Plaintiff] did not dispute that he had knowledge of
[GFA's] existence or activities on behalf of its members at the time
that he took title to the lot, but instead merely contested certain
expenditures by [GFA] that he deemed imprudent and
"unnecessary" because, in his view, they offered no benefit to his
property. Thus, as [Plaintiff] failed to raise a triable issue of fact,
we find no error in Supreme Court's holding that an implied
contract existed between the parties.

*Id.* at 1230. Moreover, the Court noted that, to the extent that Plaintiff argued that GFA was not

a homeowners' association but rather "a voluntary fishing and hunting club," his argument was

unpreserved for appellate review because he did not raise it "before Supreme Court, and, in fact,

consistently referred to [GFA] as a homeowners' association in his opposition papers." (*Id.* at

1229 n.2.)

### C.     Parties' Briefing on GFA Defendants' Motion to Dismiss

#### 1.     GFA Defendants' Memorandum of Law

Generally, in support of its motion to dismiss, GFA Defendants assert five arguments: (1) Plaintiff's claims are barred by the *Rooker-Feldman* doctrine because (a) Plaintiff lost in both State Supreme Court and on appeal to the Third Department, (b) Plaintiff alleges, in his Complaint, that he was denied his right to due process as a result of the state courts' decisions (which declared, among other things, that he was required to pay dues to GFA), (c) Plaintiff is inviting the Court to review and reject the decisions rendered by State Supreme Court and the Third Department, and he cannot succeed on any of his claims (except his legal malpractice claim) unless this Court rejects the conclusions reached by the state courts, and (d) the state court action concluded before Plaintiff filed his Complaint in this case; (2) Plaintiff's claims are barred by the doctrine of *res judicata* because (a) the state court action commenced by GFA against Plaintiff was adjudicated on the merits to a final conclusion, (b) Plaintiff's claims in this case were, or could have been, raised in the state court action, and (c) Plaintiff seeks the same relief in this case as he sought in the state court action; (3) Plaintiff's claims are barred by the doctrine of collateral estoppel because (a) the "essential issues" raised by Plaintiff's Complaint were necessarily decided in the state court action (including whether Plaintiff is bound by GFA's by-laws, whether Plaintiff is obligated to pay GFA dues and assessments, and whether GFA Defendants are liable to Plaintiff for the alleged damage to his property), and (b) Plaintiff had a full and fair opportunity to litigate these issues in the state court action; (4) Plaintiff has failed to allege facts plausibly suggesting an entitlement to relief with respect to any of his claims; and (5) Plaintiff's claims against Defendants Fibiger, Cullen, Cormie, and Green must be dismissed

because (a) they were apparently named as Defendants solely "due to their role as directors of the GFA," (b) to hold "an individual board member . . . personally liable," a plaintiff must allege facts plausibly suggesting independent tortious conduct that is "separate and apart from the collective action of the board," and (c) Plaintiff's Complaint contains no specific claims or allegations against these individual Defendants. (Dkt. No. 22, Attach. 1, at 10-25 [GFA Defs.' Memo. of Law].)[7]

---

[7]    More specifically, with respect to their fourth argument, GFA Defendants argue as follows: (a) Plaintiff's fraud claim must be dismissed because (i) Plaintiff's allegations do not meet the heightened pleading standard set forth in Fed. R. Civ. P. 9(b), (ii) to the extent that Plaintiff's fraud claims are predicated on the allegations that GFA's prosecution of the state court action and attempts to collect dues constitute a fraudulent scheme to deprive Plaintiff of his property rights, these allegations do not plausibly suggest a basis for relief, (iii) to the extent that Plaintiff has asserted a claim challenging the propriety of past amendments to GFA's by-laws, any such claim is untimely under the four-month statute of limitations set forth in New York Civil Practice Law and Rules ("CPLR") 217(1), and (iv) to the extent that Plaintiff may be understood to assert a claim under the Martin Act, New York General Business Law § 352-c, the Martin Act concerns fraud in the sale of securities and commodities and does not provide a private cause of action; (b) Plaintiff's unjust enrichment claim must be dismissed because he has failed to allege facts plausibly suggesting that GFA's attempt to collect dues (to which it has a right, as determined in the state court action) constitutes unjust enrichment; (c) Plaintiff's extortion claims must be dismissed because his Complaint (including the attachments thereto, consisting of letters and e-mails sent to Plaintiff from other lot owners in or around 2014) does not allege facts plausibly suggesting that (i) GFA has wrongfully sought to obtain property from Plaintiff to which it has no right or (ii) any of GFA Defendants' actions constituted a threat of force, violence, or fear directed toward Plaintiff; (d) Plaintiff's mail fraud and wire fraud claims must be dismissed because his Complaint (including the attachments thereto) does not allege facts plausibly suggesting that (i) GFA constitutes a criminal enterprise or (ii) any of the Defendants had a specific intent to defraud him; (e) Plaintiff's RICO claims must be dismissed because his Complaint (including the attachments thereto) does not allege facts plausibly suggesting that GFA Defendants' regular business activities (and their attempt to enforce their rights in the state court action) constitute racketeering activities, much less a pattern of such activity; and (f) Plaintiff's "malpractice and fraud" claims against McVoy must be dismissed because his Complaint (including the attachments thereto) does not allege facts plausibly suggesting that (i) McVoy performed any fraudulent act, (ii) McVoy appeared in the state court action as GFA's attorney (as opposed to appearing in his "lay capacity"), (iii) McVoy had an attorney-client relationship with Plaintiff, or (iv) McVoy's negligence was a proximate cause of any damages suffered by Plaintiff. (Dkt. No. 22, Attach. 1, at 17-24.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, liberally construing his opposition memorandum of law, Plaintiff asserts eight arguments in opposition to GFA Defendants' motion: (1) the state court action "was about money owed for services," which is "a minuscule part" of his RICO claim; (2) the state courts' decisions were predicated on "untrue, fraudulent affidavits" filed by GFA and members of its BOD; (3) GFA "continues to send bills" for dues to "all lot owners," as well as "veiled threats of legal action for failure to pay" those dues; (4) GFA's BOD has "threatened to remove docks of lot owners that do not pay" dues; (5) GFA "recently presented a by-law amendment requiring payment of GFA's legal bills with collected 'dues,'" but the amendment was not "approved by a legal number of members"; (6) GFA is "strong-arming local realtors to insist that no lot be sold without" a "restrictive covenant . . . recognizing the GFA as a Homeowner [*sic*] Association" and expressly requiring the payment of dues; (7) Ludemann (through attorney John Silvestri, Esq.) "aided and abetted" GFA in that it "failed to counter the fraudulent behavior carried on by the GFA" and "refused to consider records provided [to it] by" Plaintiff; and (8) Plaintiff and other lot owners will be irreparably harmed unless the Court issues a temporary restraining order (a) "freezing the accounts and other assets" of GFA and its BOD, (b) "proscribing Defendants from taking any action" with respect to Plaintiff's property or the property of any other lot owner, and (c) "proscribing Defendants from . . . collect[ing] dues, assessments or any money from Plaintiff and other lot owners[.]"  (Dkt. No. 23 at 2-7 [Plf.'s Opp'n Memo. of Law].)

### 3. GFA Defendants' Reply Memorandum of Law

Generally, in reply, GFA Defendants advance four arguments: (1) Plaintiff's arguments in opposition to their motion, which attack the propriety of the state courts' decisions,

demonstrate that his claims are barred by the *Rooker-Feldman* doctrine; (2) the proper avenue by which Plaintiff may challenge GFA's by-law-amendment process is through a proceeding pursuant to CPLR Article 78, and Plaintiff has never commenced such a proceeding; (3) because the state courts have already concluded that GFA may collect dues and assessments from lot owners, GFA Defendants' efforts to collect dues and assessments does not provide a plausible basis for Plaintiff's RICO, mail fraud, and wire fraud claims; and (4) Plaintiff is not entitled to "temporary" (i.e., injunctive) relief because he has failed to demonstrate (a) that he is likely to suffer irreparable injury if such relief is denied, or (b) that he is likely to succeed on the merits, given that the state courts have already decided the merits of his claims against him. (Dkt. No. 25 at 2-10 [GFA Defs.' Reply Memo. of Law].)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing a Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[8] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* plaintiffs must follow.[9] Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp. 2d at 214, n.28 [citations omitted].[10]

[8]    *See Vega v. Artus*, 610 F. Supp. 2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

[9]    *See Rosendale v. Brusie*, 374 F. App'x 195, 196 (2d Cir. 2010) ("[A]lthough the courts remain obligated to construe a pro se complaint liberally, . . . the complaint must contain sufficient factual allegations to meet the plausibility standard."); *Vega,* 610 F. Supp. 2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

[10]    It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[11]

---

later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak*, 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

[11] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco*, 622 F.3d at 111 (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the

### B. Legal Standard Governing a Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

---

authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

## III. ANALYSIS

### A. Whether the *Rooker-Feldman* Doctrine Bars Plaintiff's Claims Against GFA Defendants

After carefully considering the matter, the Court answers this question in the affirmative for each of the reasons set forth in GFA Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 22, Attach. 1, at 10-12 [GFA Defs.' Memo. of Law]; Dkt. No. 25 at 2-8 [GFA Defs.' Reply Memo. of Law].) To those reasons, the Court adds four points.

First, in his opposition memorandum of law, Plaintiff does not appear to specifically argue that any of the four requirements of the *Rooker-Feldman* doctrine have not been satisfied, and, for the reasons stated by GFA Defendants, the Court concludes that these requirements have been satisfied.[12] With respect to the first requirement, State Supreme Court found against Plaintiff (who was the defendant in that action) in all material respects (i.e., it concluded that Plaintiff was required to pay dues to GFA and that GFA established the basis for how those dues were calculated, declared that Plaintiff was bound by an implied-in-fact contract with GFA by virtue of his ownership of his lot, and granted summary judgment to GFA on Plaintiff's counterclaim for property damages). *See, supra*, Part I.B.4 of this Decision and Order. With respect to the second and third requirements, each of the claims in Plaintiff's Complaint, as well as his arguments in his opposition memorandum of law, are predicated largely on the allegations that (a) GFA has no legal right to seek dues and assessments from lot owners, (b) the state court

---

[12] "There are 'four requirements for the application of *Rooker-Feldman*': (1) the federal-court plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by a state court judgment'; (3) the plaintiff 'invite[s] . . . review and rejection of that judgment'; and (4) the state judgment was 'rendered before the district court proceedings commenced.'" *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (quoting *Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 85 [2d Cir. 2005]).

judgment finding that GFA *does* have the right to seek dues and assessments (at the very least, from Plaintiff) was entered on the basis of "affidavits, without any hearing or trial," in violation of his right to due process, and (c) the judgment *must* be rejected because it was based on the "fraudulent[] . . . impl[ication]" that GFA "was tantamount to a homeowners association, which led the Court to make membership mandatory . . . ." (Dkt. No. 1 at ¶¶ 28; 50-51; *see also* Dkt. No. 23 at 3 [Plf.'s Opp'n Memo. of Law] ["The decision in the NY case was . . . based solely upon untrue, fraudulent affidavits of the Goodnow Flow Association . . . and its members of the Board of Directors."].) Finally, with respect to the fourth requirement, the judgment against Plaintiff was entered by State Supreme Court, on December 3, 2014; the Third Department affirmed that judgment on January 21, 2016; and Plaintiff commenced this action on December 29, 2016, long after judgment was entered in state court. (Dkt. No. 1.) *See also Graves*, 135 A.D.3d at 1231.

Second (and related to the second and third requirements for the application of the *Rooker-Feldman* doctrine), although Plaintiff's Complaint asserts claims arising under constitutional provisions and federal statutes, the fact that these claims were not raised in the state court case does not preclude the application of the *Rooker-Feldman* doctrine. Indeed, with respect to Plaintiff's RICO claims (upon which his opposition memorandum of law is primarily focused), "[d]istrict courts in this circuit routinely cite *Rooker-Feldman* in dismissing RICO claims that attempt to raise alternative challenges to actions already rejected by the state courts." *Pharr v. Evergreen Garden, Inc.*, 123 F. App'x 420, 423 n.2 (2d Cir. 2005) (summary order) (collecting cases). Plaintiff's RICO claims–like his other claims–are based upon his allegations regarding GFA Defendants' attempts to extract outstanding dues and assessments from Plaintiff

and other lot owners under threat of legal action, despite the allegation that GFA Defendants are not entitled to such dues and assessments.  However, GFA's entitlement to dues and assessments from Plaintiff was one of the central issues decided–in GFA's favor–by the state courts.  In short, an adjudication of Plaintiff's claims in this case would plainly require review of the state court decisions because they are premised on the legal conclusion, rejected by the state courts, that GFA is not entitled to collect dues and assessments.

Third, although Plaintiff alleges that State Supreme Court entered judgment against him based on "fraudulent" and/or "false" affidavits filed by GFA (and that the Third Department affirmed the judgment on the basis of the same "fraudulent" and/or "false" affidavits), this allegation does not alter the Court's conclusion that *Rooker-Feldman* bars his claims in this case. *See, e.g., Vossbrinck*, 773 F.3d at 427 ("To the extent Vossbrinck asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars Vossbrinck's claim. . . . He is asking the federal court to determine whether the state judgment was wrongfully issued in favor of parties who, contrary to their representations to the court, lacked standing to foreclose.  This would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error."); *Salten v. U.S.*, 14-CV-6014, 2014 WL 5682804, at *4 (E.D.N.Y. Nov. 3, 2014) ("Under *Rooker-Feldman*, even if the state court judgment was, in fact, wrongfully procured[,] the state court judgment remains in full force and effect until it is reversed or modified by an appropriate state court.") (internal quotation marks omitted); *Wu v. Levine*, 05-CV-1234, 2005 WL 2340722, at *2 (E.D.N.Y. June 7, 2005) ("The fact that [a] plaintiff alleges that the state court judgment was procured by fraud does not remove his [or her] claims from the ambit of Rooker-Feldman.") (internal quotation marks omitted).

Fourth, and finally, the Court concludes that, to the extent that Plaintiff may be understood to cross-move for preliminary injunctive relief, he is not entitled to such relief for the reasons set forth in GFA Defendants' reply memorandum of law. (Dkt. No. 25 at 8-9 [GFA Defs.' Reply Memo. of Law].)[13] Plaintiff's cross-motion is therefore denied.

For each of these reasons, as well as those set forth in GFA Defendants' memoranda of law, the Court concludes that Plaintiff's claims against GFA Defendants are barred by the *Rooker-Feldman* doctrine, and that, as a result, the Court lacks subject matter jurisdiction over these claims. Accordingly, Plaintiff's claims against GFA Defendants are dismissed.[14]

---

[13]     With his opposition memorandum of law, Plaintiff also filed a "Notice of Motion for Temporary Relief." (Dkt. No. 24.) However, the injunctive relief requested in Plaintiff's Complaint is the same as the injunctive relief requested in his opposition memorandum of law. (Dkt. No. 1, Wherefore Clause; Dkt. No. 23, Wherefore Clause.)

[14]     As an alternative holding, the Court concludes that Plaintiff's claims against GFA Defendants are barred by the doctrine of *res judicata* for the reasons set forth in GFA Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 22, Attach. 1, at 12-15 [GFA Defs.' Memo. of Law]; Dkt. No. 25 at 2-8 [GFA Defs.' Reply Memo. of Law].) To those reasons, the Court would add two points. First, "[a] court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014). Second, Plaintiff's allegations regarding the validity of the state court judgment do not preclude the application of *res judicata*. *See, e.g., Gray v. Americredit Fin. Servs., Inc.*, 07-CV-4039, 2009 WL 1787710, at *6 (S.D.N.Y. June 23, 2009) (holding that, "[e]ven if Plaintiff's conclusory allegations regarding Americredit's purported fraud or lack of standing could be interpreted as a claim that the state court judgment (rather than the underlying transaction) was procured through fraud, *res judicata* would still apply," and noting that, "[u]nder New York law, '[t]he remedy for fraud allegedly committed during the course of a legal proceeding must be exercised in that lawsuit by moving to vacate the civil judgment [under CPLR 5015(a)(3)], and not by another plenary action collaterally attacking that judgment").

Moreover, as a (second) alternative holding, the Court concludes that Plaintiff has failed to allege facts plausibly suggesting an entitlement to relief with respect to his claims asserted against any of the GFA Defendants, for the reasons set forth in GFA Defendants' memorandum of law (enumerated *supra,* in note 6 of this Decision and Order) and reply memorandum of law. To those reasons, the Court adds three points. First (and again), Plaintiff's claims are premised on the proposition that GFA is not entitled to seek and collect dues and assessments from lot owners on the Goodnow Flow. However, the state courts concluded that GFA *is* entitled to dues

## B. Whether Plaintiff's Claims Against Defendant Ludemann Must Be *Sua Sponte* Dismissed

As noted above, liberally construed, Plaintiff's Complaint asserts (1) a claim that Defendant Ludemann engaged in legal malpractice in its representation of him in the state court proceedings, and (2) a claim that Ludemann "aided and abetted the . . . other Defendants . . . in the fraudulent, extortionist racketeering scheme" against him. (Dkt. No. 1 at ¶¶ 102-10.)

A district court has the inherent power, and indeed the duty, to *sua sponte* dismiss a complaint if it determines that it lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C.*, 565 F.3d 56, 62 (2d Cir. 2009) ("If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*.").

Here, the Court concludes that it lacks subject-matter jurisdiction over Plaintiff's aiding-and-abetting claim against Ludemann for the same reasons that it lacks subject-matter jurisdiction over the main claims asserted against GFA Defendants that Ludemann allegedly

---

and assessments from Plaintiff, and the Court takes judicial notice of this determination. *Graves*, 135 A.D.3d at 1230. Additionally, as the Third Department noted, whether GFA is properly characterized as a homeowners' association under New York State law was an issue that Plaintiff failed to preserve for appeal; indeed, Plaintiff "consistently referred to [GFA] as a homeowners' association in his opposition papers." *Id.* at 1229 n.2. Second, to the extent that Plaintiff's Complaint asserts his federal claims pursuant to 42 U.S.C. § 1983, the Court concludes that he has not alleged facts plausibly suggesting any state action, which "is an essential element of any § 1983 claim." *Schisler v. Rizio*, 17-CV-0310, 2017 WL 3172860, at *2 (N.D.N.Y. July 26, 2017) (D'Agostino, J.) (internal quotation marks omitted). Third, Plaintiff's Complaint does not come close to alleging facts plausibly suggesting that GFA Defendants engaged in a pattern of racketeering activity, whether through mail fraud, wire fraud, or otherwise. *See, e.g., Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (setting forth the elements of a civil RICO claim, and noting that, "[t]o prove a violation of the mail fraud statute, [a] plaintiff[] must establish the existence of a fraudulent scheme and a mailing in furtherance of the scheme").

aided and abetted: the *Rooker-Feldman* doctrine bars the Court's consideration of this claim.

More specifically, the basis for Plaintiff's claims against GFA Defendants is that GFA had no

legal right to collect dues and assessments from him as a lot owner on the Goodnow Flow, and

that the GFA Defendants made misrepresentations during the state court proceedings. As stated

earlier, the Court concludes that the *Rooker-Feldman* doctrine bars the Court's consideration of

these claims, because the claims hinge on a review and rejection of the judgment entered by

State Supreme Court (and affirmed by the Third Department). By extension, the Court

concludes that the *Rooker-Feldman* doctrine also bars its consideration of the aiding-and-

abetting claim.[15] Plaintiff's aiding-and-abetting claim against Ludemann is therefore *sua sponte*

dismissed.[16]

Finally, after carefully considering the relevant factors (i.e., economy, convenience,

fairness and comity), the Court finds that they weigh decidedly in favor of declining to exercise

---

[15] The Court notes that, although Defendant Ludemann was not a party in the state court proceeding (and, indeed, Ludemann represented Plaintiff in that proceeding), "the *Rooker-Feldman* doctrine does not require that the federal-court defendant have been a party in the prior state court proceeding." *Wenegieme v. U.S. Bank Nat'l Assoc.*, 16-CV-6548, 2017 WL 1857254, at *8 n.16 (S.D.N.Y. May 4, 2017) (quoting *Best v. Bank of Am., N.A.*, 14-CV-6546, 2015 WL 5124463, at *3 [E.D.N.Y. Sept. 1, 2015]); *see also In re Hernandez*, No. 15-14451, 2017 WL 2963457, at *2 (11th Cir. July 12, 2017) (explaining that, for the *Rooker-Feldman* "doctrine to apply, only the party seeking to upset a state court judgment had to have been a party to the state court action") (citing *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 [1994]).

[16] The Court notes that, even if it had subject-matter jurisdiction over Plaintiff's aiding-and-abetting claim, it would be skeptical of whether this claim is nonfrivolous. Setting aside the fact that the Court has concluded (as an alternative holding) that Plaintiff has failed to allege facts plausibly suggesting an entitlement to relief with respect to his claims against GFA Defendants, Plaintiff alleges only that Ludemann (through Silvestri) failed to schedule depositions, failed to return phone calls to Plaintiff, missed office conferences, failed to review documents provided to him in support of Plaintiff's counterclaim, and failed to advise Plaintiff of the date of "the hearing on his appeal." (Dkt. No. 1 at ¶¶ 103-08.) These factual allegations, although arguably copious and detailed, do not come close to plausibly suggesting that Ludemann aided and abetted racketeering or fraudulent activity.

supplemental jurisdiction over Plaintiff's remaining state law claim against Defendant

Ludemann (i.e., his claim of legal malpractice). The Court notes that it may *sua sponte* render

this determination. *See Rothenberg v. Daus*, 08-CV-0567, 2015 WL 1408655, at *11, n. 12

(S.D.N.Y. March 27, 2015) ("[P]laintiffs' contention that the court may not decline to exercise

supplemental jurisdiction *sua sponte* contravenes black letter law."); *Star Multi Care Servs., Inc.*

*v. Empire Blue Cross Blue Shield*, 6 F. Supp.3d 275, 293 (E.D.N.Y.2014) ("[T]he Court *sua*

*sponte* declines to exercise supplemental jurisdiction over the remaining [state law] claims

against [defendants]."). As a result, Plaintiff's state law claim against Defendant Ludemann is

dismissed without prejudice to refiling in New York State Court within thirty (30) days of this

Decision and Order, pursuant to 28 U.S.C. § 1367(d).

**C.**  **Whether Plaintiff Must Be Granted Leave to Amend Prior to Dismissal of His Claims Against GFA Defendants and His Aiding-and-Abetting Claim Against Ludemann**

Generally, before a district court dismisses a *pro se* action, the plaintiff will be allowed to

amend his complaint. *Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).

However, an opportunity to amend is not required where the defects in the plaintiff's claims are

substantive rather than merely formal, such that any amendment would be futile. *See Foman v.*

*Davis*, 371 U.S. 178, 182 (1962) (explaining that a denial of leave to amend is not an abuse of

discretion where the amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.

2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure

it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see*

*also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)

("Our opinion today, of course, leaves unaltered the grounds on which denial of leave to amend

has long been held proper, such as undue delay, bad faith, dilatory motive, and futility . . . .").

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco*, 222 F.3d at 103; *Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). This is because, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12. *See Vega v. Artus,* 610 F. Supp.2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 214 & n.34 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. *See Vega,* 610 F. Supp.2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases). Simply stated, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 214, n.28 (N.D.N.Y. 2008) (McAvoy, J.).

Here, the Court finds that the defects in Plaintiff's Complaint are substantive and not merely formal. *See, e.g., Steuerwald v. Cleveland,* 651 F. App'x 49, 51 (2d Cir. 2016) (summary order) ("[A]ny additional amendment of [the plaintiff's] claims against Cleveland would have been futile because those claims were barred by res judicata."); *Weissbrod v. Gonzalez*, 576 F. App'x 18, 19 (2d Cir. 2014) (summary order) ("[G]ranting leave to amend would have been futile in light of the applicability of the *Rooker-Feldman* doctrine . . . .") (citing *Cuoco*, 222 F.3d at 112).

**ACCORDINGLY**, it is

**ORDERED** that the Clerk amend the caption on the docket sheet of this case in accord with note 1 of this Decision and Order; and it is further

**ORDERED** that GFA Defendants' motion to dismiss the claims asserted against them in Plaintiff's Complaint (Dkt. No. 22) is <u>**GRANTED**</u>, and those claims are <u>**DISMISSED**</u> **without prejudice**; and it is further

**ORDERED** that Plaintiff's cross-motion for injunctive relief (Dkt. No. 24) is <u>**DENIED**</u>; and it is further

**ORDERED** that Plaintiff's claims against Defendant Ludemann, McMorris & Silvestri, P.C., are *sua sponte* <u>**DISMISSED**</u> **without prejudice**, his state-law claim for legal malpractice being dismissed without prejudice to refiling in state court within thirty (30) days of this Decision and Order pursuant to 28 U.S.C. § 1367(d).

Dated:  September 27, 2017
        Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge